NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT MANGANELLI,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF ORANGE TOWNSHIP, *et al.*,<br><br>Defendants. | Civil Action No.: 13-4415 (JLL)<br><br>**OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendants City of Orange Township ("Township"), City of Orange Township Fire Department ("Township FD"), Mayor Dwayne D. Warren, and Deputy Fire Chief Michael R. Dowd's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Local Federal Rule of Civil Procedure 56.1. (ECF No. 56). Plaintiff Robert Manganelli has submitted an opposition (ECF No. 59), which Defendants have not replied to.[1] The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants in part and denies in part Defendants' Motion for Summary Judgment.

---

[1] The time to submit a reply has since lapsed. This Motion was returnable on January 16, 2018, which meant Defendants were required to submit any reply to Plaintiff's Opposition on or before January 9, 2018. *See* L. Civ. R. 7.1(d)(3).

## I. BACKGROUND[2]

### A. The Parties

Plaintiff, who is a New Jersey resident, is a former firefighter with Defendant Township FD. (Def. SMF ¶¶ 21, 41[3]). Plaintiff first joined Defendant Township FD in June of 1981 and officially retired from same on February 1, 2013. (Id.). Defendant Dowd joined Defendant Township FD in the year 1980. (Id. ¶ 22). Defendant Warren became mayor of Defendant Township on May 8, 2010, when he defeated incumbent mayor Eldridge Hawkins. (Def. SMF ¶ 25).

### B. Pertinent Facts

As noted above, Plaintiff's tenure with Township FD began in 1981 and concluded in early 2013. (Def. SMF ¶¶ 21, 41). In 2011, the position of Fire Chief for Defendant Township FD became vacant and Defendant Township FD sought to fill same. (Id. ¶ 23). Plaintiff and Defendant Dowd were the only two applicants for the Fire Chief position, with Plaintiff ultimately being hired. (Id.). At that time, former mayor Hawkins was still in office, despite having lost to Defendant Warren in the recent municipal elections. (Id. ¶ 24). Plaintiff finally assumed the position of Fire Chief on October 6, 2011. (Id. ¶ 26).

On or about May 10, 2012, Defendant Dowd "threatened [P]laintiff's employment as Fire Chief." (Id. ¶ 27). Specifically, Defendant Dowd said to Plaintiff: "This may be a little premature,

---

[2] These background facts are taken from the parties' statements of material facts, pursuant to Local Civil Rule 56.1. (ECF No. 56-9, Defendants' Rule 56.1 Statement of Facts ("Def. SMF"); ECF No. 59 at 8-16, Plaintiff's Rule 56.1 Statement of Facts ("Pl. SMF"); and ECF No. 59 at 2-7, Plaintiff's Responses to Defendants' Statement of Material Facts ("Pl. Opp. SMF"). To the extent that Plaintiff admits to any Material Facts as stated by Defendants, the Court will cite only to "Def. SMF" and the relevant paragraph number. The Court will "disregard all factual and legal arguments, opinions and any other portions of the 56.1 Statement which extend beyond statements of facts." *Globespanvirata, Inc. v. Tex. Instrument, Inc.*, 2005 U.S. Dist. LEXIS 27820, at *10 (D.N.J. Nov. 10, 2005); *see also* L. Civ. R. 56.1 ("Each statement of material facts . . . shall not contain legal argument or conclusions of law.").
[3] Improperly numbered as "31."

2

but I am going to tell you now anyway that it would be a good idea to get out before July and let this kid take care of you while you can." (Id.). Additionally, Defendant Dowd said to Plaintiff: "Don't wait until July 2 (the date upon which [Defendant] Warren would assume office) because you know what happened to your buddy John Gamba." (Id.). Mr. Gamba was terminated as Fire Chief, and instituted his own separate legal action in connection with same. (Id.).

Plaintiff filed disciplinary charges against Defendant Dowd for his statements. (Id.). Defendant Dowd was suspended without pay as a result of disciplinary charges filed by Plaintiff. (Id. ¶ 28). "The disciplinary action was ultimately dismissed upon settlement on July 24, 2012."[4] (Id.). Also on July 24, 2012, Defendant Dowd was appointed as "Acting Fire Director" of Defendant Township FD. (Id. ¶ 29).

In or about July 2012, Plaintiff, in his capacity as Fire Chief, met with Defendant Warren on various occasions to discuss various fire department related issues. (Id. ¶ 30). For example, Plaintiff and Defendant Warren met to discuss a dispute between another firefighter and Defendant Dowd. (Id.). On another occasion, Plaintiff met with Defendant Warren to discuss Defendant Dowd's disciplinary matter and "adjustment to [P]laintiff's salary." (Id.). Apparently, Defendant Warren told Plaintiff that the raise Plaintiff was seeking was "illegal" and "the Law Department was working on [D]efendant Dowd's disciplinary matter." (Id.).

On July 31, 2012, Plaintiff saw Defendant Dowd sitting in Plaintiff's office and at Plaintiff's desk. (Id. ¶ 31). "At that time, [D]efendant Dowd told … [P]laintiff to move his stuff out of that office because it" now belonged to Defendant Dowd. (Id.). The next day, Plaintiff attended a meeting where Defendant Dowd told Plaintiff that Plaintiff was no longer permitted to

---

[4] The Court notes that the parties have not disclosed the terms of the settlement. However, said terms do not seem to be relevant to subject application.

contact the Law Department, Defendant Warren's office or the Business Administration office directly, "and that all further departmental orders were to go through [Defendant Dowd] first." (Id. ¶ 33). Further, Defendant Dowd explained to Plaintiff that Plaintiff was no longer permitted to spend any money without prior authorization from Defendant Dowd. (Id.). Finally, at the August 1, 2012 meeting, Plaintiff was told "that he should pick his vacation days and provide a list to [D]efendant Dowd." (Id.).

Plaintiff outlines additional allegedly "hostile" actions by Defendant Dowd. In one instance, Plaintiff was told to remove all his belongings from his work vehicle and return the keys to Defendant Dowd. (Id. ¶ 34). Plaintiff was later provided with another vehicle and acknowledges that his contract did not specify the type of vehicle Defendant Township FD was supposed to provide him with. (Id.). Plaintiff also notes that Defendant Dowd "made certain personnel transfers" and that "[D]efendant Dowd would engage in activities that were delineated as job specifications for [Plaintiff's] position as Fire Chief." (Id. ¶¶ 35-36). Defendant Dowd also prevented Plaintiff from using a Defendant Township FD vehicle while Plaintiff was on vacation. (Id. ¶ 37).

Thereafter, Plaintiff contacted the Civil Service Commission to complain that Defendant Dowd was usurping his authority by performing job tasks that were assigned to the Fire Chief and not the Fire Director. (Pl. SMF ¶ 12). Additionally, Plaintiff complained "that Defendant Dowd was acting in the capacity as a Fire Director when in fact he was a Deputy Fire Chief." (Id. ¶ 13). Plaintiff further noted that this conduct was in violation of both Defendant Township's salary ordinance as well as the Civil Service Commission's regulations. (Id. ¶ 14). The Civil Service Commission conducted an investigation and "audited the position" to assure "that the person in

the position is doing the duties of the title that they [*sic*] hold." (Id. ¶¶ 16-17). During this investigation, Plaintiff complained "that Defendant Dowd was acting out of title." (Id. ¶ 18).

Subsequently, in September 2012, Plaintiff further notified the Civil Service Commission that Defendant Dowd was limiting Plaintiff's responsibilities as Fire Chief. (Id. ¶ 20). On September 20, 2012, the Civil Service Commission sent Defendant Township a letter, which explained that Defendant Dowd was improperly appointed to an unclassified title, was inappropriately appearing at fire suppression scenes, improperly giving orders to uniformed firefighters, and improperly ordering firefighters to work overtime. (Id. ¶ 21). Accordingly, the Civil Service Commission asked "that Defendants complete a Duties Questionnaire" and demote Defendant Dowd to Fire Captain. (Id.). At the conclusion of its investigation, the Civil Service Commission found that Defendant Dowd was using an improper title and his supervisory reporting relationship over Plaintiff was improper. (Id. ¶ 23). Accordingly, "the Civil Service Commission ordered that 'effective immediately, [Defendant Down] may not issue any commands or orders or change the duties of Fire Chief Manganelli ... until the request for the [improper] unclassified title'" that Defendant Dowd was using was approved by the Commission itself. (Id.).

Thereafter, Plaintiff was advised that a firefighter had filed a harassment complaint against him. (Id. ¶ 28). Plaintiff claims these allegations were fabricated in order to have Plaintiff removed from his position. (Def. SMF ¶ 39). Additionally, Plaintiff was advised that non-party John Wade was appointed to serve as the internal investigator and that Defendant Dowd would serve as the Hearing Officer. (Pl. SMF ¶ 28). "On October 15, [2012,] Plaintiff took medical leave." (Id. ¶

40). Plaintiff never returned to Defendant Township FD after his medical leave and ultimately retired on February 1, 2013. (Id. ¶ 41[5]).

Against this backdrop, Plaintiff instituted this action asserting the following causes of action: Count I – Violation of Civil Rights under 42 U.S.C. § 1983; Count II – Hostile Work Environment in violation of the New Jersey Law Against Discrimination ("NJLAD"); Count III – Unlawful Retaliation in violation of NJLAD; Count IV – Constructive Discharge; Count V – Aiding and Abetting Liability; Count VI – Violation of the Conscientious Employees Protection Act ("CEPA"); Count VII – Breach of Contract; and Count VIII – Breach of the Covenant of Good Faith and Fair Dealing. (ECF No. 1).

## II. LEGAL STANDARD

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists no "genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[T]he moving party must show that the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof at trial." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). If a reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 242-43 ("At the

---

[5] Improperly numbered as "31."

summary judgment stage, the trial judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

### III.  ANALYSIS

Preliminarily, the Court notes that the parties have grouped the Plaintiff's claims into four distinct groups. (*See generally* ECF No. 56-9 ("Def. Br."); ECF No 59 ("Pl. Opp. Br.")). The first group relates to Count I of Plaintiff's Complaint, which asserts a claim for violation of Plaintiff's civil right to freedom of association[6] in violation of 42 U.S.C. § 1983. (*Id.* at 3-7; *Id.* at 19-22). The next group pertains to all of Plaintiff's NJLAD and Constructive Discharge claims, including the aiding and abetting claim. (*Id.* at 8-9; *Id.* at 22-24). The third group relates to Count VI of Plaintiff's Complaint, which asserts a claim for violation of CEPA. (*Id.* at 10-19; *Id.* at 25-38). Finally, the last group pertains to Plaintiff's common law claims for breach of contract and breach of the implied covenant of good faith and fair dealing. (*Id.* at 20; *Id.* at 39). The Court will address each of these groups consistent with the parties' briefings.

#### A. Counts I – Violation of Plaintiff's Civil Right to Freedom of Association

"The First Amendment prevents the government from 'abridging the freedom of speech ... or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.'" *Nat'l Ass'n for Advancement of Multijurisdiction Practice v. Simandle*, 658 F. App'x 127, 137 (3d Cir. 2016) (quoting U.S. Const. amend. I.). The Supreme Court has characterized its freedom of association jurisprudence as follows:

> Our decisions have referred to constitutionally protected "freedom of association" in two distinct senses. In one line of decisions, the Court has

---

[6] While the parties do not explicitly use the term "freedom of association," it is apparent from Plaintiff's Complaint, and the relevant briefing herein, that civil right to freedom of association is the implicated civil right in this action.

> concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties.

*Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984).

The Third Circuit has established a three-part test to analyze whether a public employee has a viable political discrimination case. *See Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 663-64 (3d Cir. 2002) (quoting *Roberston v. Fiore*, 62 F.3d 596, 599 (3d Cir. 1995)). First, the plaintiff must establish that he or she worked "for a public agency that does not require political affiliation." *Goodman*, 293 F.3d at 663. Next, the plaintiff must prove that he or she "maintained an affiliation with a political party." *Id.* at 663-64. Finally, the plaintiff must show that his or her "political affiliation was a substantial or motivating factor in the adverse employment decision." *Id.* at 664. Hence, promotions, transfers, and other hiring or employment decisions may not be based upon a person's party affiliation. *See Rutan v. Republican Party of Ill.*, 497 U.S. 62, 79 (1990).

Here, the Court finds that genuine issues of material fact exist which preclude summary judgment in favor of Defendants. Initially, the Court notes that the first prong is not contested by either party and therefore no further analysis is necessary. (ECF No. 59 ("Pl. Opp. Br.") at 20; ECF No. 56-11 ("Def. Mov. Br.") at 4). Additionally, a review of the record shows that a genuine issue of material fact exists with respect to whether Plaintiff maintained a political affiliation and

whether said affiliation was the basis for Defendants' alleged adverse employment decisions toward Plaintiff.

Contrary to Defendants' assertions, a genuine issue of material fact exists with regard to their knowledge of Plaintiff's political affiliation. There is no dispute that Plaintiff was appointed as Fire Chief by former mayor Hawkins. (Compl. ¶ 24). Hence, at the very least, Defendants were aware of the fact that Plaintiff had some affiliation to the incumbent administration. (Id. ¶ 24). Moreover, Defendant Dowd made statements that a reasonable fact finder could glean to be threats based on Plaintiff's political affiliation with former mayor Hawkins. Statements in the record such as "[d]on't wait until July 2 (the date upon which [Defendant] Warren would assume office) because you know what happened to your buddy John Gamba" simply prevent Defendants from obtaining summary judgment in their favor.[7] (*See id.* ¶ 27).

Additionally, the Court cannot unequivocally conclude that Defendants' actions toward Plaintiff, after Defendant Warren assumed his mayoral position, were not based on Plaintiff's connection with former mayor Hawkins. Rather, the record contains numerous issues of material fact regarding how Plaintiff was or was not treated after Defendant Warren became mayor. As a matter of fact, the Civil Service Commission concluded that Defendants inappropriately promoted Defendant Dowd after Plaintiff complained regarding same. (Compl. ¶¶ 20-21, 23). Accordingly, the Court finds that Defendants' Motion for Summary Judgment as to Plaintiff's § 1983 claim fails.

---

[7] The Supreme Court in *Rutan, supra* at 76 n. 8, held that even an act as trivial as refusing to hold a birthday party is an adverse employment action when the reason for same was to punish a person for exercising his or her freedom of speech.

9

**B. Counts II-V – NJLAD Based Claims**

Plaintiff's claims for "Hostile Work Environment" (Count II), "Unlawful Retaliation" (Count III), "Constructive Discharge" (Count IV), and "Aiding and Abetting Liability" (Count V) are NJLAD based claims. The starting point for an action brought pursuant to the NJLAD is the framework outlined by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *See also Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 300 (3d Cir. 2004) ("The Supreme Court of New Jersey has explained the three-step burden shifting analysis 'as a starting point' for analysis of claims under the NJLAD.") (citing *Bergen Commercial Bank v. Sisler*, 157 N.J. 188, 210 (N.J. 1999)). The three-step *McDonnell Douglas* analysis proceeds as follows. First, a plaintiff must establish a *prima facie* case of discrimination. *Monaco*, 359 F.3d at 300. To establish a *prima facie* case of discriminatory discharge under the NJLAD, a plaintiff must demonstrate: 1) *that he is a member of a protected class*; 2) that he was otherwise qualified and performing the essential functions of the job; 3) that he was terminated; and 4) that the employer thereafter sought similarly qualified individuals for the job who were not members of his protected class. *See Victor v. State*, 203 N.J. 383, 408-09 (2010).

The Court need not go beyond the first prong of the above test to conclude that summary judgment is appropriate with respect to Plaintiff's NJLAD based claims. Indeed, NJLAD enumerates specific protected classes for purposes of the statute. *See* N.J.S.A. 10:5-12 (prohibiting discrimination in employment based on race, creed, color, national origin ancestry, age, marital status, affectional or sexual orientation, genetic information, sex, atypical hereditary cellular or blood trait, liability for service in the United States military, nationality, and refusal to submit to a genetic test or make available the results of a genetic test to an employer). Nowhere within

NJLAD's language is there mention of political affiliation or the freedom of assembly. *Id.* Furthermore, Courts within this district, relying on the language of NJLAD, have explicitly concluded, on more than one occasion, that political affiliation is not a protected class under the statute. *See Siss v. Cty. of Passaic*, 75 F. Supp. 2d 325, 335 (D.N.J. 1999) ("NJLAD prohibits employers from discriminating in employment on numbers bases, but these do not include political affiliation") (citing N.J.S.A. 10:5-12(a)); *see also McGown v. N.J.*, 2009 U.S. Dist. LEXIS 50463, at *20 (D.N.J. June 16, 2009) (quoting *Siss*, *supra* at 335).

Plaintiff's NJLAD claims under Counts II-V assert that Defendants violated the statute because the alleged adverse employment actions taken by them were fueled by Plaintiff's political affiliation with former mayor Hawkins. However, as explained, NJLAD does not contemplate a cause of action premised on political affiliation. Therefore, there is no genuine issue of material fact that Plaintiff does not fall into one of the enumerated NJLAD protected classes. Since Plaintiff is not a member of a protected class, his NJLAD based claims must fail as a matter of law. Accordingly, the Court will grant Defendants' summary judgment as to NJLAD based claims contained in Counts II-V of Plaintiff's Complaint.

### C. Count VI – CEPA Claim

New Jersey's CEPA, N.J.S.A. 34:19-1, *et seq.*, was enacted to protect employees who report illegal or unethical actions in the workplace, and also to encourage such reporting. *Fleming v. Corr. Healthcare Solutions, Inc.*, 164 N.J. 90, 96 (2000). New Jersey courts apply the above mentioned *McDonnell-Douglas* burden-shifting framework in evaluating claims under this statute as well. In order to assert a retaliation case under CEPA, a plaintiff must prove by a preponderance of the evidence that: (1) he or she reasonably believed that his or her employer's conduct was

violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a whistleblowing activity described in N.J.S.A. 34:19-3(c); (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistleblowing activity and the adverse employment action. *Massarano v. NJ Transit*, 400 N.J. Super. 474, 490 (N.J. Super. App. Div. 2008) (quotation omitted). The burden then shifts to the employer to produce a legitimate, nondiscriminatory reason for taking the employment action, after which it is the employee's burden to demonstrate pretext by a preponderance of the evidence. *See generally Klein v. Univ. of Med. and Dentistry*, 377 N.J. Super. 28 (N.J. Super. App. Div. 2005).

The record before the Court does not support summary judgment in favor of Defendant. Instead, genuine issues of material fact permeate throughout the portion of the record that relates to Plaintiff's CEPA claim. Indeed, the record shows a reasonable jury could find that Plaintiff meets the first two prongs easily.

First, Plaintiff believed that, when Defendants permitted Defendant Dowd to "act out of title" and limited Plaintiff's responsibilities as Fire Chief, Defendants violated Civil Service Commission regulations, Defendant Township's salary ordinance, and the collective bargaining agreement governing Plaintiff's employment. (Compl. ¶¶ 13-23). Based on his beliefs that Defendants were violating the aforementioned laws, rules, and regulations, Plaintiff filed a complaint with the Civil Service Commission. (Id. ¶ 12). Hence, Plaintiff believed that Defendants were violating laws and regulations, and reported said violations to the Civil Service Commission, thereby satisfying the first two prongs of *Massarano*. Moreover, as explained, genuine issues of material fact exist with respect to whether Defendants' conduct could be

considered adverse employment actions, and, if so, whether those adverse employment actions were a result of the fact that Plaintiff complained to the Civil Service Commission. In other words, the Court will not issue summary judgment in Defendants' favor as to Plaintiff's CEPA claims because genuine issues of material fact exist as to every *Massarano* prong.

### D. Counts VII-VIII – Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing

The Court finds that the record contains genuine issues of material fact with respect to Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing such that summary judgment may not be issued in favor of Defendants. A plaintiff bringing an action for breach of contract under New Jersey law must demonstrate that: 1) the parties entered into a valid contract; 2) the defendant failed to perform his obligations under the contract; and 3) that the plaintiff sustained damages as a result. *Murphy v. Implicito*, 392 N.J. Super. 245, 265 (App. Div. 2007); *see also Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). Here, it is clear that a contract exists between the parties, as there is a collective bargaining agreement that governs Plaintiff's employment and his relationship with Defendants as his employer. (ECF No. 56 at Exhibit M).

What remains unclear, however, is whether Defendants' conduct toward Plaintiff, after Defendant Warren became mayor, violated the collective bargaining agreement. Plaintiff's complaints to the Civil Service Commission and its response thereto is further proof that a genuine issue of material fact exists. (Compl. ¶¶ 13-23). Thus, the record does not support Defendants' position that they did not violate the collective bargaining agreement. Lastly, with respect to the breach of contract claim, Plaintiff has set forth sufficient evidence to show that he chose to retire at an earlier-than-optimal time and that he suffered economic damage due to this early retirement.

(Pl. Opp. Br. at 39). Accordingly, Defendants are not entitled to summary judgment with regard to Plaintiff's breach of contract claim.

Finally, under New Jersey law, all contracts include an implied covenant that the parties to the contract will discharge their duties contained in said contract in good faith. *See Sons of Thunder. Inc. v. Borden, Inc.*, 148 N.J. 396, 420 (1997). The covenant "mandates that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 254 (App. Div. 2002) (quotations omitted). "A good faith performance doctrine may be said to permit the exercise of discretion for any purpose—including ordinary business purposes—reasonably within the contemplation of the parties. It follows, then, that a contract would be breached by *a failure to perform in good faith if a party uses its discretion for a reason outside the contemplated range*—a reason beyond the risks assumed by the party claiming the breach." *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 246 (2001) (emphasis added).

Under the above standard, summary judgment may not issue in favor of Defendants on Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. As a threshold matter, because Plaintiff's breach of contract claim is surviving summary judgment, his breach of implied covenant of good faith and fair dealing claim remains viable as well. Moreover, a genuine issue of material fact remains in connection with this claim because Plaintiff has produced sufficient evidence that Defendants acted in a manner that was potentially designed to destroy or injure Plaintiff's rights under the collective bargaining agreement. Indeed, a reasonable jury could find that choosing to improperly promote Defendant Dowd above Plaintiff after Plaintiff was properly appointed as Fire Chief, removing Plaintiff from his office, and taking away his previous

work vehicle, in conjunction with the comments made by Defendant Dowd, were decisions designed to force Plaintiff to resign and thereby in violation of the collective bargaining agreement's covenant of good faith and fair dealing. Accordingly, the Court will not grant summary judgment in favor of Defendants in connection with this claim.

## IV. CONCLUSION

For the aforementioned reasons, Defendants' Motion for Summary Judgment is granted in part and denied in part. An appropriate Order accompanies this Opinion.

DATED: March 13, 2018

JOSE L. LINARES
Chief Judge, United States District Court